UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANN LENG,<br><br>  Petitioner,<br><br>  v.<br><br>BRUCE GELB,<br><br>  Respondent. | *<br>*<br>*<br>*<br>*<br>*  Civil Action No. 14-cv-10462-ADB<br>*<br>*<br>*<br>*<br>*<br>* |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

  Petitioner Savann Leng ("Leng") is currently serving a life sentence in Massachusetts prison following his conviction on the charge of first-degree murder, Mass. Gen. Laws ch. 265, § 1. Presently pending before this Court is Leng's petition for habeas corpus relief brought pursuant to 28 U.S.C. § 2254, arguing that his trial suffered from federal constitutional violations. Having reviewed the parties' submissions, and construing Leng's petition liberally because he is proceeding *pro se*, this Court <u>DENIES</u> Leng's petition for a writ of habeas corpus for the reasons explained below.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

  Leng directly appealed his state court conviction and the denial of his motion for a new trial to the Massachusetts Supreme Judicial Court ("SJC"), and the SJC consolidated both appeals. <u>Commonwealth v. Leng</u>, 979 N.E.2d 199, 202 (Mass. 2012). Before the SJC, Leng argued "that his trial counsel was ineffective by reason of (1) his failure to object to evidence of gang membership, (2) his failure to object to the testimony of a substitute medical examiner, (3) his failure to present evidence of the defendant's state of intoxication, and (4) his failure to

request manslaughter instructions based on a sudden transport of passion on reasonable provocation and sudden combat, and excessive use of force in defense of another." Id.

The SJC affirmed Leng's murder conviction. Id. "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The SJC made the following factual findings in reviewing Leng's case, which Leng has not rebutted by clear and convincing evidence, see id.:

> [Leng], Corey Kneeland, and Bunrath La, members of a gang known as the Dangerous Lowell Bloods (DLB), attended a party at an apartment in Lowell on October 31, 2006. Kneeland and Joshua Gens, the victim, became embroiled in an argument over a bottle of beer. Kneeland raised his hand to strike the victim, but before he could land a blow, the victim struck Kneeland in the head twice with a beer bottle, drawing blood. They fought. Kneeland grabbed a wrench and struck the victim with it. La then hit the victim over the head with a chair. The victim fell to the floor. [Leng] entered the room waving a gun, and announced, "Who wanna die?" The fighting stopped. He asked Kneeland who hit him in the head. Kneeland pointed to the victim. [Leng] asked the victim if he wanted to die. He aimed the gun at the victim, and then shot him. Kneeland, La, and [Leng] fled. The victim died about two hours later from a gunshot wound to the chest that perforated his right lung and caused massive bleeding.

Leng, 979 N.E.2d at 202–03.

The SJC also made a number of findings specifically relevant to each of the grounds on which Leng appealed. First, with regard to gang membership, the SJC found that Leng's "[t]rial counsel filed a motion in limine to exclude this evidence, but it was denied. Counsel did not . . . object[ ] at the time the evidence was admitted." Id. at 203. Furthermore, the SJC found that evidence of Leng's membership in a gang and the gang members' obligations to help each other in fights was relevant to motive and to providing context for why Kneeland and La were reluctant to tell the police who they saw shoot the victim. Id. at 204. In rejecting Leng's

2

argument that evidence of his gang involvement was substantially more prejudicial than probative, the SJC held that the evidence was properly within the trial judge's discretion to admit, especially because she took precautionary measures to limit the evidence to the issue of motive.[1] Id. at 204. Accordingly, the SJC concluded, counsel was not ineffective in failing to object to the admission of this gang-related evidence. Id. at 204–05.

Second, with respect to the involuntary manslaughter instructions, the SJC found that "there was no evidence that the victim had provoked [Leng] at the time of the shooting, or had engaged him in combat[;] . . . that he posed a threat of serious harm to [Leng;] . . . [that] the victim was armed, or threatened to harm [Leng], or made any move toward [Leng; or] . . . that the victim posed any ongoing threat to Kneeland at the time of the shooting." Id. at 208. It noted that "[p]rovocation must come from the victim." Id. (quoting Commonwealth v. Ruiz, 817 N.E.2d 771, 781 (Mass. 2004)). The SJC therefore rejected Leng's argument that his trial counsel should have requested a voluntary manslaughter instruction when there was no evidence to support such an instruction. Id.

Third, the SJC acknowledged that Leng's trial counsel did not call a witness to testify on an intoxication defense at trial and that he did not solicit such information from witnesses, like Kneeland, who testified and allegedly knew of Leng's intoxication. Id. at 207. The SJC, however, rejected Leng's argument that his trial counsel should have brought up the defense of intoxication. Id. The court, in affirming the lower court's conclusions regarding counsel's performance, noted that pursuing an intoxication defense while simultaneously pursuing the

---

[1] "The judge conducted an individual voir dire of prospective jurors regarding gang-related evidence, she gave a forceful limiting instruction immediately after the evidence was admitted, and she charged the jury in her final instructions on the proper use of the gang membership evidence. We add that the prosecutor made only minimal use of the gang-related evidence." Leng, 979 N.E.2d at 204.

identification defense would have put Leng's trial counsel in the "untenable" position of having to argue that Kneeland was credible on the issue of intoxication—in support of the intoxication defense—but not credible on the issue of identity—in support of the main defense that Leng was not the shooter.  Id.

> Fourth, with regard to the substitute medical examiner, the court found that:
>
>> trial counsel and the prosecutor entered into a multifaceted agreement concerning photographic evidence that implicated the testimony of the substitute medical examiner. Under the terms of the agreement no autopsy photographs would be offered in evidence and trial counsel would not contest the cause of death. In addition only three photographs of the victim would be offered in evidence. They also agreed to exclude from evidence a photograph of [Leng] with a DLB gang tattoo, and to crop a "Thug Life" tattoo from a photograph of [Leng]. At the conclusion of the direct examination of the substitute medical examiner, trial counsel reaffirmed his part of the agreement, stating he "intentionally" had not objected to the witness's testimony.

Id. at 205. The SJC concluded that such an agreement, including the confrontation rights waiver, was permissible. Id. The court therefore rejected Leng's argument that failing to object to the substitute medical examiner's testimony constituted ineffective assistance of counsel because Leng did not meet his burden of showing that the absence of the original examiner was prejudicial to his case. Id.

On February 28, 2016, Leng filed the instant petition for federal habeas review of his state court conviction. [ECF No. 1]. He presented four grounds for relief:  (1) that the prejudice from the admission of evidence of his membership in a gang far outweighed whatever probative value the evidence may have had; (2) that the failure of Leng's trial counsel to present evidence of Leng's intoxication at the time of the murder deprived Leng of effective assistance of counsel; (3) that the failure of Leng's trial counsel to request a jury instruction on manslaughter amounted to ineffective assistance of counsel; and (4) that allowing a substitute medical examiner to testify

4

violated the Confrontation Clause and further, that the failure of Leng's trial counsel to object to this testimony constituted ineffective assistance of counsel. In the Memorandum of Law in support of his petition, Leng couches all four grounds for relief in terms of ineffective assistance of counsel. See [ECF No. 24 at 2].

On November 13, 2014, Respondent Bruce Gelb ("Gelb"), through counsel, filed a memorandum of law opposing Leng's habeas petition. [ECF No. 29]. Gelb is the Superintendent of Souza-Baranowski Correctional Center in Shirley, Massachusetts, where Leng is currently incarcerated. Gelb opposes all four of Leng's stated grounds for relief. He argues that the SJC reasonably applied the appropriate federal law in each instance, and therefore, habeas corpus relief is inappropriate under § 2254.

## II.   LEGAL STANDARD

A federal district court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214. The AEDPA permits a federal court to grant habeas relief after a final state adjudication only if the claim was adjudicated on the merits and:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[2]

---

[2] The substantial deference to the state court decision outlined by § 2254(d) applies only to claims adjudicated on the merits, and "[i]f the federal claim was never addressed by the state court, federal review is de novo." Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007). Leng, however, only lays out the standards under § 2254(d) and the Court sees no argument that it should apply *de novo* review.

Under § 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law. . . . [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision is considered an unreasonable application of Supreme Court precedent if the state court identifies the correct legal rule but unreasonably applies it to the facts. Id. at 413. An unreasonable application requires "some increment of incorrectness beyond error." Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (quoting McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). A state court decision is "unreasonable if it is devoid of record support for its conclusion for its conclusion or is arbitrary." Id. (quoting McCambridge, 303 F.3d at 37). Thus, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

Under § 2254(d)(2), the AEDPA also permits "relief from a state court judgment if that judgment is based on an unreasonable determination of the facts." Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002) (citing 28 U.S.C. § 2254(d)(2)). State court "factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Id. (quoting Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002)). Thus, the petitioner's burden in this regard is "heavy," and if it is not met, "a federal habeas court must credit the state court's findings of fact—and that remains true when those findings are made by a state appellate court as well as when they are made by a state trial court." Id.

### III. DISCUSSION

#### a. Ground One: Admission of Evidence of Leng's Membership in a Gang

On habeas, Leng first argues that "the prejudicial effect of 'gang evidence' far outweighed whatever probative value such evidence might have had," [ECF No. 1 at 5], and that his counsel was ineffective for failing to object to the admission of the gang evidence, [ECF No. 24 at 2]. Gelb argues that this claim is not cognizable on habeas review because it raises a freestanding state law issue, that Leng's attempt to transform this ground into an ineffective assistance of counsel claim in his Memorandum of Law comes too late in the proceedings, and that any claim under the Sixth Amendment on this issue nonetheless lacks merit.

"The habeas corpus anodyne is designed neither to provide an additional layer of conventional appellate review nor to correct garden-variety errors, whether of fact or law, that may stain the record of a state criminal trial." Burks v. DuBois, 55 F.3d 712, 715 (1st Cir. 1995). Rather, on habeas, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Therefore, issues of state law are not grounds for federal habeas relief. Id. at 67–68; see also Paulding v. Allen, 303 F.Supp.2d 26, 31 (D. Mass. 2004) (declining to review state law claim on federal habeas review).

Rule 2(c) of the Rules Governing § 2254 Cases in the United States District Courts provides, in relevant part, that "a petition must . . . (1) specify all grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground." In his petition, Leng raised the issue of prejudicial gang membership evidence as a pure state law claim without reference to the ineffective assistance of his counsel. Only later, in his Memorandum of Law, did Leng change this argument to one based on the Sixth Amendment's right to effective assistance of counsel.

7

See [ECF No. 24 at 2]. "It is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claims for habeas relief." Smiley v. Maloney, No. 01-11648, 2003 WL 23327540, at *15 n.39 (D. Mass. Oct. 31, 2003), aff'd 422 F.3d 17 (1st Cir. 2005); see also Felder v. Dickhaut, 968 F.Supp.2d 334, 349 (D. Mass. 2013); McGee v. Medeiros, No. 15-114982016 WL 837930, at *5 n.3 (D. Mass. March 2, 2016) ("McGee's failure to raise the Griffith claim in his petition precludes the Court from granting relief on that basis."). Because this federal constitutional argument appeared for the first time in the Memorandum of Law and not in the original petition, Leng is barred from arguing that his trial counsel's failure to object to evidence relating to his gang membership was ineffective assistance of counsel under the Sixth Amendment.

Leng's argument also fails on the merits. Strickland v. Washington, 466 U.S. 668 (1984), established the standard to apply in determining whether counsel's assistance violates the Sixth Amendment. In its opinion in this case, the SJC applied the ineffective assistance of counsel standard established in Commonwealth v. Saferian, 315 N.E.2d 878 (Mass. 1974). See Leng, 979 N.E.2d at 203. Saferian has long been recognized as largely equivalent to Strickland. See Lynch v. Ficco, 438 F.3d 35, 48 (1st Cir. 2006) ("In fact, the SJC's standard for ineffective assistance of counsel, articulated in Commonwealth v. Saferian, 315 N.E.2d 878, 883 (1974), is the functional equivalent of the Strickland standard."); see also Scarpa v. Dubois, 38 F.3d 1, 7 (1st Cir. 1994). "The Saferian standard is 'whether there has been serious incompetency, inefficiency, or inattention of counsel—behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer—and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence.'" Lynch, 438 F.3d at 48 (quoting Saferian, 315 N.E.2d at 883).

To succeed under Strickland, a petitioner must show that "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Smiley, 422 F.3d 17, 20 (1st Cir. 2005) (quoting Strickland, 466 U.S. at 684))). The Supreme Court has repeatedly stressed that "[s]urmounting *Strickland*'s high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010); see also Harrington v. Richter, 562 U.S. 86, 105 (2011).

Under the Strickland standard, "[d]efense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, as to which leads to follow up, and on which areas to focus his [or her] energies." Phoenix v. Matesanz, 233 F.3d 77, 84 (1st Cir. 2000); Strickland, 466 U.S. at 689 ("[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Thus, the bipartite Strickland test is broadly deferential to the decisions of trial counsel. Strickland, 466 U.S. at 689. "Counsel . . . is not required to pursue every path until it bears fruit or until all available hope withers." Genius v. Pepe, 147 F.3d 64, 67 (1st Cir. 1998) (quoting Solomon v. Kemp, 735 F.2d 395, 402 (11th Cir. 1984), cert. denied, 469 U.S. 1181 (1985)). The deferential standard set forth in Strickland becomes "doubly" deferential when applied in the context of a habeas petition under § 2254(d). Harrington, 562 U.S. at 105 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)). "The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The SJC found the gang-related evidence "highly relevant" to helping the jury understand the events surrounding the murder and certain witnesses' subsequent reluctance to identify the shooter to the police. Leng, 979 N.E.2d at 204. Moreover, the SJC concluded that the judge

limited the prejudicial impact of the evidence and properly left it to the jury to assess the gang-related evidence's weight and relevance. Id. Thus, the SJC held that "[a]n objection to such properly admitted evidence would not likely have been successful," and accordingly there was no ineffective assistance of counsel. Id. at 205. This was not unreasonable. There was no discernible prejudice in defense counsel's failure to object to the gang-related evidence on these facts because the SJC concluded that an objection would likely not have succeeded. Under Strickland, failing "to pursue a futile tactic" does not result in deficient performance. Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999). Thus, the SJC's decision is not contrary to, or an unreasonable application of, the Strickland standard. Accordingly, Leng's first claim does not warrant federal habeas relief.

      **b. Ground Two: Ineffective Assistance of Counsel Due to Failure to Raise an Intoxication Defense**

Leng also claims that his trial counsel was unconstitutionally deficient because he did not raise the defense of intoxication at trial. In Massachusetts, "a jury may consider the question whether a defendant charged with murder in the first degree was so overcome by alcohol or some other drug that he was incapable of deliberate premeditation." Commonwealth v. Henson, 476 N.E.2d 947, 953 (Mass. 1985). Leng argues that, in light of all the facts known to his trial counsel, he should have used an intoxication defense, and that not doing so prejudiced Leng's defense. Gelb argues that, under Strickland, Leng's trial counsel reasonably forewent an intoxication defense in favor of an identity defense, rendering this ineffective assistance of counsel claim meritless.

In its opinion, the SJC applied the ineffective assistance of counsel standard established in Commonwealth v. Saferian, 315 N.E.2d 878 (Mass. 1974).[3] In rejecting Leng's argument that his counsel was ineffective for failing to pursue an intoxication defense, the SJC reasoned that electing to pursue an intoxication defense could have undermined an identity defense because the two defenses were inconsistent with each other. Leng, 979 N.E.2d at 207. If Leng's counsel had pursued an intoxication defense, he "would [have] be[en] left in the untenable position of arguing that Kneeland was credible on intoxication but not credible on identification." Id. Under Strickland, Leng's counsel was not required to pursue two contradictory defenses. Moreover, it was reasonable to conclude that the choice of an identity defense over an intoxication defense was well within the broad discretion a defense attorney has in choosing amongst various defense theories. It was reasonable for counsel to have concluded that pursuing both theories would have made each less effective than a single, consistent defense. Thus, the SJC's rejection of Leng's claim that his counsel was ineffective for failing to pursue an intoxication defense was not a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d). Accordingly, Leng's second claim does not warrant federal habeas relief.

    c. **Ground Three: Ineffective Assistance of Counsel for Failure to Request a Voluntary Manslaughter Instruction**

Leng further claims that his trial counsel was ineffective because he failed to request a jury instruction on voluntary manslaughter. Leng does not offer any substantive arguments as to how his counsel's refusal to request such an instruction amounted to ineffective assistance of

---

[3] While the SJC did not cite Saferian directly in the section discussing Leng's ineffective assistance of counsel argument pertaining to the intoxication defense, the Court infers that the SJC did apply the Saferian standard because it cited Saferian earlier in its opinion in deciding Leng's ineffective assistance of counsel argument pertaining to the gang membership evidence.

11

counsel, but insists that evidence supporting the instruction existed at the time of trial and that such an instruction would have made a difference in the trial's outcome. Specifically, Leng argues that "[i]n the instant that a young person sees the bleeding wound on a close friend's forehead that young person's anger could easily flare and with a gun already in hand shoot the perpetrator of the bloody injury without premeditation." [ECF No. 24 at 14]. Gelb argues first that Leng waived this argument by failing to develop it in his memorandum of law, and also argues that there was insufficient evidence for a voluntary manslaughter instruction at the time of trial.

The Court first finds that Leng's argument is waived. The First Circuit has long held "that issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned." Ryan v. Royal Ins. Co. of Am., 916 F.2d 731, 734 (1st Cir. 1990) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Here, Leng offered little more than a definition of manslaughter under Massachusetts law. He went on to state that his counsel should have requested the voluntary manslaughter instruction without any analysis of the Strickland standard. Thus, because Leng has not offered anything more than perfunctory argument regarding the manslaughter instruction as a basis for a claim of ineffective assistance of counsel, the claim is waived.

Even if not waived, however, the argument fails. The SJC held that there was no basis in the evidence to issue a voluntary manslaughter instruction based on the theories advanced by Leng, which included a sudden transport of passion on reasonable provocation and sudden combat. The SJC held that "[t]he victim's conduct could not be considered reasonable provocation because there was no evidence that he posed a threat of serious harm to the defendant. There was no evidence the victim was armed, or threatened to harm the defendant, or

made any move toward the defendant." Leng, 979 N.E.2d at 208. Leng has failed to rebut these factual findings. Under Massachusetts law, a judge is not required to issue a jury instruction that is unsupported by the evidence. See Commonwealth v. Donlan, 764 N.E.2d 800, 805 (Mass. 2002). Again, "declin[ing] to pursue a futile tactic" does not amount to ineffective assistance of counsel under Strickland. Vieux, 184 F. 3d at 64. Given the SJC's unrebutted factual findings, its determination that Leng's counsel was not ineffective for failing to request instructions on voluntary manslaughter was not contrary to, or an unreasonable application of, clearly established law under Strickland.

### d. Ground Four: Confrontation Clause and Ineffective Assistance of Counsel Regarding the Substitute Medical Examiner

Leng's final asserted ground for relief involves two interlocking arguments. The first is that the testimony of the substitute medical examiner violated the Confrontation Clause of the Sixth Amendment. The second is that trial counsel's failure to object to the use of the substitute medical examiner constituted ineffective assistance of counsel. The SJC's decision that there was no ineffective assistance of counsel involving the testimony of the substitute medical examiner is not contrary to, or an unreasonable application of, clearly established federal law. Further, because Leng's Confrontation Clause claim is barred by the independent and adequate state grounds doctrine, Leng cannot obtain relief on either argument.

#### i. *The Confrontation Clause Claim*

In his petition, Leng claims that the testimony of the substitute medical examiner at his trial violated the Confrontation Clause of "both constitutions."[4] [ECF No. 1 at 10]. Gelb argues

---

[4] As explained above, this Court cannot review any state law or state constitutional issue on habeas review. See Estelle, 502 U.S. at 67–68. Thus, to the extent that Leng argues that there was a violation of a Confrontation Clause analogue under the Massachusetts constitution, the Court does not address it.

13

that this Confrontation Clause argument was not preserved in Leng's memorandum of law, that it was dismissed by the SJC on adequate and independent state law grounds, and that the claim nonetheless lacks merit under current Confrontation Clause jurisprudence.

In reviewing this case, the SJC found that Leng's trial counsel waived objections to the substitute medical examiner's testimony by entering into an agreement with state prosecutors, which is permissible. Leng, 979 N.E.2d at 205 ("This type of agreement, which includes a waiver of confrontation rights as to cause of death, is permissible."). This "waiver of confrontation rights as to cause of death," was part of a larger "multifaceted agreement concerning photographic evidence that implicated the testimony of the substitute medical examiner." Id. As part of the agreement, defense counsel agreed not to contest the cause of death, and prosecutors agreed not to use any autopsy photographs, offer only three photographs of the victim, exclude a photograph of Leng's DLB gang tattoo, and crop out the "Thug Life" tattoo from a photo of Leng. Id. At the end of the substitute medical examiner's testimony, Leng's counsel once again noted to the trial judge that he had "intentionally" not objected to the testimony. Id.

Federal courts conducting habeas review are barred from reviewing "federal claims that have been defaulted under state law," and, under the "independent and adequate state ground" doctrine, "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Lambrix v. Singletary, 520 U.S. 518, 522–23 (1997) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). There are two circumstances under which such claims can be reviewed, namely, if (1) "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or [2] [the prisoner can] demonstrate

that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

Here, the SJC held that Leng waived his confrontation rights. Leng, 979 N.E.2d at 205. Confrontation rights are waivable. United States v. Houlihan, 92 F.3d 1271, 1279 (1st Cir. 1996). Under Massachusetts law, "a claim not raised is waived." Gunter v. Maloney, 291 F.3d 74, 79–80 (1st Cir. 2002). This is a state procedural rule that provides an adequate and independent state ground for denying the claim and thereby bars federal habeas review of the claim. Id. To avoid the independent and adequate state ground bar, Leng now argues that he never gave his counsel permission to waive his confrontation rights. Leng, however, did not challenge the validity of the waiver before the SJC, and does not explain why he failed to do so. By failing to challenge the validity of the waiver on direct appeal, Leng defaulted the claim. See Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent'" (internal citations omitted)).

Furthermore, the record indicates that he did acquiesce to his counsel's strategic waiver of his confrontation rights. Leng was present at the trial and did not indicate any objection to his counsel's waiver at the time, which the counsel explicitly noted on the record in his presence. See Cruzado v. Puerto Rico, 210 F.2d 789, 791 (1st Cir. 1954) (holding that counsel, in the presence of and on behalf of an accused, may waive the accused's right of confrontation because "[i]f the accused, being present, manifests no dissent, it is usually fair to assume that he approves of, or at least acquiesces in, the decisions taken in open court in his behalf by his counsel"); see also Janosky v. St. Amand, 594 F.3d 39, 48 (1st Cir. 2010) (approvingly citing cases that have

allowed counsel to waive Confrontation Clause rights when client did not object and decision to waive was part of a prudent trial strategy, including Cruzado). Thus, not only is the challenge to the validity of the waiver defaulted, but it also appears that Leng did in fact acquiesce to the waiver. Waiver by the defendant, an independent and adequate state ground for the SJC's determination, applies as a bar to habeas review here.

Consequently, the Court is barred from reviewing the Confrontation Clause claim unless Leng can show cause for the default and that prejudice resulted from the default. See Coleman, 501 U.S. at 750. Because, in a case involving the procedural default of a federal claim based on state law, one way to demonstrate cause is to show ineffective assistance in violation of the Sixth Amendment, the Court addresses next Leng's argument that his counsel was ineffective in failing to object to the substitute medical examiner testimony. See Horton v. Allen, 370 F.3d 75, 81 (1st Cir. 2004).

## ii. *Ineffective Assistance of Counsel Claim*

Leng argues that his trial counsel's failure to object to the substitute medical examiner's testimony amounted to ineffective assistance of counsel. Gelb responds that Leng's trial counsel was not ineffective under the Sixth Amendment because the SJC correctly held that counsel's decision not to object to the substitute medical examiner was reasonable and not prejudicial under the Strickland standard.

As laid out above, Strickland governs all ineffective assistance of counsel claims under the Sixth Amendment. Under Strickland, establishing ineffective assistance of counsel requires a showing that the trial counsel's behavior fell below a reasonable professional standard and that such behavior prejudiced the defense. Knight, 447 F.3d at 15. Trial counsel may reasonably waive Sixth Amendment rights, especially if there is a strategic reason for doing so. See Horton,

16

370 F.3d at 82–83 (discussing waiver of public trial right under Sixth Amendment); see also United States v. Theresius Filippi, 918 F.2d 244, 248 (1st Cir. 1990) (collecting cases involving waivers of various Sixth Amendment rights). All that this Court must do on habeas review is ensure that the SJC's decision—that there was no ineffective assistance of counsel in waiving confrontation rights—is not contrary to, or an unreasonable application of, clearly established federal law. See § 2254(d).

In this case, although the SJC did not directly cite Saferian, the state standard for evaluating ineffective assistance claims, in discussing Leng's ineffective assistance of counsel claim involving the substitute medical examiner, it clearly utilized the Saferian framework in reaching its conclusion. See Leng, 979 N.E.2d at 205–06. The SJC found that the agreement brokered by Leng's attorney and the prosecutor was not only permissible under Massachusetts law, but also a reasonable strategy decision for the defense. Id. at 205 ("Here, there was no reason to challenge the cause of death because it was not inconsistent with the defense of identity."). The SJC also found that Leng's defense would not have gained much from cross-examining the substitute medical examiner, and, without the agreement with the prosecutors, photographic evidence and tattoos—that would have likely bolstered the prosecution's case—could have come in. Id. In fact, the SJC noted that "[t]he identification defense was focused, straightforward, and very well executed. By all indications the defense strategy was extremely well conceived, and not manifestly unreasonable." Id. at 205–06. Based on this, the SJC held that there was no ineffective assistance of counsel. See id. at 206. Strickland and its progeny does not require a different conclusion. Defense counsel's decision not to challenge the substitute medical examiner's testimony was a reasonable strategy to keep out other potentially harmful evidence. Moreover, given that the cause of death was relatively uncomplicated—the victim suffered a

17

gunshot wound to the chest—it was reasonable to conclude that a challenge to the substitute medical examiner's testimony would not have significantly benefited the defendant. Such a calculation was clearly within the broad discretion of the trial counsel under the Strickland standard. Thus, the SJC's decision is not contrary to, or an unreasonable application of, clearly established federal law applying the Strickland standard.

Accordingly, Leng's claim of ineffective assistance of counsel regarding the testimony of the substitute medical examiner fails. Therefore, Leng has not shown how either of the two exceptions, see Coleman, 501 U.S. at 750, permit federal habeas review of his Confrontation Clause claim which is otherwise barred under the independent and adequate state ground doctrine.

## IV.    CONCLUSION

For the reasons stated herein, the Court hereby DENIES Leng's petition for a writ of habeas corpus [ECF No. 1].

**SO ORDERED.**

December 22, 2016                                         /s/ Allison D. Burroughs
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE